Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

Boston Division

| | | |
|---|---|---|
| Yaroslav Kyrpych | ) | Case No. _____ |
| | ) | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | Jury Trial: *(check one)* ☒ Yes ☐ No |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| -v- | ) | |
| | ) | |
| Chrstine McMahon Cullinan, Individually and in her | ) | |
| Official Capacity as ADA Norfolk County District | ) | |
| Attorney Office, | ) | |
| See attached | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | | |
| *write "see attached" in the space and attach an additional page* | | |
| *with the full list of names.)* | | |

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Yaroslav Kyrpych |
| Street Address | 228 Hilltop Dr |
| City and County | Walpole, Norfolk County |
| State and Zip Code | MA 02081 |
| Telephone Number | (857) 869-0080 |
| E-mail Address | yaroslav.kyrpych@gmail.com |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**B.**  **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Chrstine McMahon Cullinan |
| Job or Title *(if known)* | Assistant District Attorney |
| Street Address | 45 Shawmut Road |
| City and County | Canton Norfolk County |
| State and Zip Code | MA 02021 |
| Telephone Number | (781) 830-4800 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Kristen Denise Kelly |
| Job or Title *(if known)* | Assistant District Attorney |
| Street Address | 45 Shawmut Road |
| City and County | Canton Norfolk County |
| State and Zip Code | MA 02021 |
| Telephone Number | (781) 830-4935 |
| E-mail Address *(if known)* | Kristen.D.Kelly@mass.gov |

Defendant No. 3

| | |
|---|---|
| Name | Katelyn Marie Jay |
| Job or Title *(if known)* | Assistant District Attorney |
| Street Address | 45 Shawmut Road |
| City and County | Canton Norfolk County |
| State and Zip Code | MA 02021 |
| Telephone Number | (781) 830-4800 |
| E-mail Address *(if known)* | Katelyn.Jay@mass.gov |

Defendant No. 4

| | |
|---|---|
| Name | Elise Marian Barry |
| Job or Title *(if known)* | Response Worker |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |

E-mail Address *(if known)*     elise.m.barry@mass.gov

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question          ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Deprivation of parental rights and due process rights under color of law under 42 U.S.C. § 1983

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

     a.     If the plaintiff is an individual

The plaintiff, *(name)* _____ , is a citizen of the State of *(name)* _____ .

     b.     If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

     a.     If the defendant is an individual

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

The defendant, *(name)* _____ , is a citizen of
the State of *(name)* _____ . Or is a citizen of
*(foreign nation)* _____ .

    b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under
the laws of the State of *(name)* _____ , and has its
principal place of business in the State of *(name)* _____ .
Or is incorporated under the laws of *(foreign nation)* _____ ,
and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**Condensed summary of allegations:**

DCF Waltham workers Elise Marian Barry (obtained license under different name - Elise Marian Sullivan, LSW315201), Shannon McAnulty (LSWA416619), Sandra E. Fontecchio (no longer with DCF, LSWA414173), Cheryl Banks (in DCF reports goes by Cheryl Casey, LSW3028157), Katheryn L Butterfield (LICSW120201), Alison C Coleman-Hardy (LICSW114522), Azelene D. Edouarzin (LICSW117680), Laura A Rafael (LCSW218541), Michelle F Frazer (LSWA413870), Steven F. Ruscio (LSWA414333), Philip J. Clossey (LCSW224698) in collaboration with Norfolk County DA Office ADAs Chrstine McMahon Cullinan (lead ADA, MA BBO 684728), Kristen Denise Kelly (MA BBO 692567), Katelyn Marie Jay (MA BBO 709336), employee of Norfolk County DA Office affiliate Rachael Downey Sullivan (Rachael Anne Sullivan, LMHC10000641), Norfolk Probate and Family Court Judge Lee Mumford Peterson (MA BBO 656305), GAL Meghan Honigman attempted to conceal sexual and physical abuse of my children – Alexandra and Katherine – by Carolyn P. Gannon (Mother) and her partner Brian P. Divasta under influence of psychomotor stimulant drugs (dextroamphetamine and cocaine) through falsified DCF investigation called 51B report by Elise Marian Barry. Then, DCF workers Sandra Fontecchio and Shannon McAnulty in collaboration with Mother, Brian Divasta and facilitated by Mother's attorneys Ryan Faenza Carey PC fabricated false sexual abuse allegations against Father which mimicked children's allegations against Mother and Brian Divasta except the source was shifted from Mother and Brian Divasta to Father. ADA Chrstine McMahon Cullinan influenced DCF response worker Shannon McAnulty to fabricate her investigation in order to find these allegations supported by concealing dispositive exonerating evidence from the 51B report that was in possession of Norfolk County DA Office and available to Shannon McAnulty. These false allegations supported by DCF then were used in Norfolk Family and Probate Court by Mother's attorney Ryan Faenza Carey PC to deprive Father of his parental rights on 4/6/2023 which continues to the present and prevent him from seeing children for almost 2 years. Since 4/6/2023, DCF workers Sandra Fontecchio and Steven Ruscio consistently engaged in lying, manipulating, and obstructing due process during their testimonies (7/5/2023, 9/6/2023, 5/13/2024) in family court with the goal to prevent Father from seeing his children and violating DCF's own policy of immediate reunification. Sandra Fontecchio engaged in secret, personal, off-record communication with Mother, her attorney Ryan Faenza Carey PC and Judge Lee Mumford Peterson to coordinate her false testimonies in the court. Judge Lee Mumford Peterson even expressed preferences to Ryan Faenza Carey PC and Mother for Sandra Fontecchio to testify over Steven Ruscio who did not lie as aggressively during his only testimony as Sandar Fontecchio did. Norfolk County DA Office was and currently is preventing Father's access to SAIN videos which was basis for supported allegation in DCF report prepared by Shannon McAnulty. Norfolk County DA Office lied in the Norfolk Probate and Family Court on 9/6/2023 that investigation is still active while it was not in order to prevent Father's access to these SAIN videos. Judge Lee Mumford Peterson falsified Findings of Fact to conceal Mother's serious mental illnesses, symptoms and markers of Mother's stimulant abuse, Mother's test result that showed "high probability of substance abuse" result, Alex' physical injuries while in Mother's custody, children's sexual abuse by Mother and Brian Divasta under influence of psychomotor stimulant drugs. Judge Lee Mumford Peterson prevented Father from properly representing himself during trial saying that the state does not have resources for trial. This prevented Father from brining testimony of most of his witnesses. Prior to trial, Judge Lee Mumford Peterson prohibited Father's access to children's medical records that have evidence exculpatory of Father and inculpatory of Mother which prevented him from properly representing himself during hearings leading to trial and at trial.

1. Concealing sexual abuse of Father's children - Alex and Katherine - by Mother and Brian Divasta under influence of psychomotor stimulant drugs

1.1. Dimissing allegations of children's sexual abuse filed by Memorial school guidance counselor Kathleen Bockhorst by DCF Waltham without even attempting to investigate it

On January 2, 2023, both of my children – Alex and Katherine – saw Mother and her partner Brian Divasta dancing naked followed by sex. While in Mother's custody, Alex reported her observations to Memorial school guidance counselor Kathleen Bockhorst on January 4, 2023 who filed complaint with DCF known as 51A report on January 12, 2023 in addition to another complaint on January 11, 2023 for Mother being violent and aggressive to Alex for disclosing this information to Kathleen Bockhorst. Addiction medicine expert Dr. John

Eustace testified in the court that this behavior is consistent with use of psychomotor stimulants which cause disinhibition. Mother has substance use disorder and is prescribed dextroamphetamine. Brian Divasta also has substance use disorder, had been hospitalized in the past due to substance withdrawal seizures, ordered to attend IOP, and has history of cocaine use with multiple relapses.

On January 8, 2023, Mother secretly records video with Katherine who stated to Mother multiple times that she saw her dancing naked. Mother attempted to manipulate Katherine to say that she was coached by Father which she denied multiple times.

On January 12, 2023, Waltham area DCF workers (Alison C Coleman-Hardy, Katheryn L Butterfield, Laura A Rafael, Michelle F Frazer) dismissed allegations in 51A reports filed by Kathleen Bockhorst without any attempt to investigate while knowing that both Mother and Brian Divasta have substance use disorder, and Brian Divasta felony conviction for endangering his children while intoxicated. Later, Waltham area DCF KOR Linda Green, DCF worker Steven Ruscio concealed these reports from subpoena. See items 25-40 in Timeline of Events with references to supporting documents.

1.2. Falsifying investigation by DCF response worker Elise Marian Barry (aka Elise Marian Sullivan) to conceal children's sexual abuse

On January 16, 2023, Mother brings both children to unscheduled, ad-hoc PCP visit in hope that Alex will reverse her allegations after threatening Alex at home that she will go to foster care. Alex repeated her allegations and described sexual intercourse (Brian Divasta putting penis into Mother's vagina) to PCP who filed 51A report indicating that it's tough situation where "he said, she said" and who was mis-informed by Mother about Mother's serious mental illnesses (Major Depressive Disorder - F33.1, Generalized Anxiety Disorder - F41.1, panic attacks, Psychophysiological Insomnia - F51.04, anger management problems) and that Mother is not on addictive psychotropic medication Dextroamphetamine along Ativan (benzodiazepine), Prozac (SSRI), Seroquel (atypical antipsychotic), Trazodone (antidepressant, serotonin receptor antagonist and reuptake inhibitor).

DCF Waltham assigns DCF worker Elise M. Barry (she used Elise M. Sullivan name to obtain the license) LSW315201 to do investigation (1/23/2023-2/8/2023). DCF worker Elise M. Barry concealed that she has misdemeanor conviction in New Hampshire (7th Circuit, District Division, Dover, NH, case No: 432-2016-CR-02916, Durham PD report No: 16DUR-317-AR) for abuse of substance in public space. She obtained social worker license in MA under different last name - Sullivan.

DCF worker Elise M. Barry (Elise M. Sullivan) engaged in secret private off-record communication with Mother, which was not disclosed in DCF records, and where she was pressuring Mother to make children reverse their allegations of sexual abuse.

On January 25, 2023, Alex again reiterated her allegations against Mother and Brian Divasta to Elise M. Barry while being interviewed without presence of Mother or Father at Memorial school. Both children denied being coached by Father to DCF worker Elise M. Barry. After Mother learnt that Alex did not reverse allegations during interview with DCF worker Elise M. Barry, she hits Alex on the evening of 1/29/2023 and calls DCF worker Elise M. Barry on the morning of 1/31/2023 informing her that Alex has lied and is now ready to reverse her allegations and asking to reinterview her. DCF worker Elise M. Barry reassures Mother that there is no need to reinterview Alex as she will find Alex to be a liar instead. No independent collateral stated that Alex was a liar to DCF worker Elise M. Barry. Multiple educational providers deposed by Father stated that Alex was forthcoming and never implicated in lying. DCF worker Elise M. Barry did not ask Katherine about her observations of Mother and Brian Divasta dancing naked and having sex despite being aware that Katherine also made the same allegations.

DCF worker Elise M. Barry was aware that Mother locked both children as punishment for not reversing their position during PCP visit on 1/16/2023. Both children informed DCF worker Elise M. Barry that Mother locked them up. Father shared Mother's email from specialized app called OurFamilyWizard where Mother admitted to

punishing Alex for lying to PCP by reiterating her allegations on 1/16/2023. Both children reported that Mother is being aggressive – Alex reiterated that she was violently shaken by Mother and Katherine reported that Mother yells at them. Katherine reported that Brian Divasta hit her in the arm.

DCF worker Elise M. Barry was aware that children's PCP Kristen Perras was severely mis-informed by Mother about her mental illnesses and respective psychotropic medication. Despite knowing that PCP was mis-informed by Mother and that Mother has substance use disorder, DCF worker Elise M. Barry concealed Mother's mental illnesses and respective psychotropic medications which included highly addictive psychomotor stimulant Dextroamphetamine by not obtaining respective records and not interviewing Mother's nurse prescriber Matthew Peculis and therapist Ronna Dallal while being aware of their existence from Mother.

DCF worker Elise M. Barry concealed Brian Divasta's felony conviction for endangering his own children while being intoxicated and pictures of damage to Brian Divasta's car from accidents shared with her by Father. Information about Brian Divasta's felony conviction was available to DCF worker Elise M. Barry through DCF own system and Father shared with her criminal docket report from Framingham District Court.

DCF worker Elise M. Barry concealed Brian Divasta's substance use disorder involving cocaine, marijuana, LSD, psylocibin, Vicodin. Brian Divasta stated at deposition he was happy to share it but DCF workers did not ask him.

DCF worker Elise M. Barry concealed Brian Divasta's mental health status including anger management problems despite being aware that he is seeing therapist for his mental health issues.

DCF worker Elise M. Barry concealed PCP notes dated 1/6/2023 shared with her by Father where Mother influenced PCP that Father was coaching children.

DCF worker Elise M. Barry concealed PCP and Newton-Wellesley Hospital notes shared with her by Father which showed that no psychiatric disorder was found upon Alex' evaluation and which showed that Mother intentionally triggered Alex and brought to Newton-Wellesley Hospital to diagnose as mentally ill after Alex saw Mother's and Brian Divasta's naked dancing followed by sex.

DCF worker Elise M. Barry concealed PCP medical notes sent to her by Father describing Mother and Brian Divasta dancing naked followed by sex.

DCF worker Elise M. Barry concealed that Father arranged therapy for Alex.

DCF worker Elise M. Barry concealed Alex diagnosis which was "Adjustment Disorder, unspecified". She also never spoke to Alex' former therapist or obtained therapy notes.

No SAIN interview was offered to Alex or Katherine.

DCF worker Elise M. Barry found Alex to be liar because she who was 6 yo could not provide date when she observed naked dancing followed by sex and used words penis and vagina.

DCF worker Elise M. Barry found that Father was coaching Alex and preventing Alex from being in therapy. Per 258 CMR 12.03, DCF worker Elise M. Barry violated scope of her professional practice as Elise M. Barry can only engage in non-clinical, administrative work, gathering factual data and had no qualifications to determine if Alex has lied and was coached and performed work out of her scope of work.

This report by Elise M. Barry was approved by DCF worker Michelle F Frazer. Michelle F Frazer violated scope of her professional practice as per 258 CMR 12.04 as she cannot supervise anyone as her licensure is Licensed Social Worker Associate and it's below licensure of Elise M. Barry.

2. DCF response worker Shannon McAnulty in collaboration with ADA Christine McMahon Cullinan, DCF

ongoing worker, Mother and her attorney Ryan Faenza Carey PC fabricated sexual abuse allegations against Father, found them supported despite having dispositive exonerating evidence and presented supported allegations in the Norfolk Probate and Family Court to deprive Father of his parental rights.

On February 10, 2023, DCF enrolls Mother into Family Stabilization Services (FSS) agreement and First Steps program which is Massachusetts state program for addicted parents. Mother was assigned ongoing social worker Sandra Fontecchio as part of FSS and Jessica Grant as part of First Steps program. Jessica Grant LICSW128014 was DCF contractor.

On February 24, 2023, Sandra Fontecchio files 51A report with allegations against Father purely based on Mother's allegations conveyed to Sandra Fontecchio. Sandra Fontecchio lied at deposition on August 2, 2024 that she did not file this report.

On March 1, 2023, Memorial school principal Melissa Bilsborough filed 51A report and have follow-up call where she informs DCF and Sandra Fontecchio that Mother called with a list of allegations against Father none of which were disclosed at school by Alex who was having weekly one-on-ones with school guidance counselor Kathleen Bockhorst.

On March 2, 2023, Sandra Fontecchio meets with children for the first time via video call. Sandra Fontecchio stated in her notes that Alex was open, forthcoming in making allegations against Father stating that Father is angry and yells. These allegations mimic allegations that Melissa Bilsborough informed Sandra Fontecchio about on March 1, 2023 that they originated from Mother and were not disclosed by Alex at school. Per Mother's own statements and notes from former Alex' therapist, Alex takes long time to open up to outsiders. Despite this Sandra Fontecchio is adamant in her notes that Alex is not coached. Sandra Fontecchio admitted at deposition on 8/2/2024 that she has no qualification to determine if child is coached and could not even provide criteria to determine if child is coached. Sandra Fontecchio violated scope of service as per 258 CMR 12.04 – LSWA explicitly prohibits any activity except gathering factual data while performing administrative duties.

On March 2, 2023, after meeting with Sandra Fontecchio, Mother took Alex to Walpole PD to force Alex to make allegations against Father there. They met with sergeant Patrick O'Connor. Mother urged Alex few times to make allegations against Father. Alex finally stated that Father is angry and yelling. Alex at the same time denied any sexual or physical abuse.

On March 8, 2023, Father was last time with children for nearly 2 years.

On March 11, 2023, Mother staged incident that Alex wanted to kill her hamster and invited Medfield PD to record it. Alex denied attempted killing of her hamster and stated to Sergeant G. Ledbetter that Father does not harm her in any way.

Mother developed sexual abuse allegations against Father that mimic allegations against her and her partner Brian Divasta by Alex and Katherine on 1/2/2023 and legitimized them through ongoing DCF worker Sandra Fontecchio in collaboration with Ryan Faenza Carey PC. Mother provided false sexual abuse allegations in advance to DCF worker Sandra Fontecchio.

On March 13, 2023, Mother informed children's PCP office about her allegations and that Ryan Faenza Carey PC will support her allegations through DCF. Then, Mother invites Sandra Fontecchio to interview Alex by going through this list of allegations. One of the allegations is that Father showing Alex pornography. Another one is that Father touching Alex sexually during shower. Sandra Fontecchio immediately filed 51A report with Mother's allegations where she was very open that allegations originated from Mother. Sandra Fontecchio was fully aware that these allegations are not corroborated by school which called her on 3/1/2023 and informed that Alex did not make any allegations against Father. Nor Alex stated these allegations to PCP. Right after filing 51A report with allegations, Sandra Fontecchio called Mother's attorney – Ryan Faenza Carey PC to report that she did it. Only later, she informed her own supervisor at that time – Philip Clossey that she filed it. 51A report filed by DCF worker Sandra Fontecchio was violation of DCF's own rules that requires dismissal of allegations

that originate from one parent against another parent. Philip Clossey did not get concerned by that Sandra Fontecchio's blatant abuse of her position. DCF Waltham screening team also did not screen out allegations despite being aware they originated from Mother which is normally cause for a dismissal of 51A report. It was approved by Cheryl Banks who later also will approve fabricated 51B report prepared by Shannon McAnulty.

On March 14, 2023, DCF response worker Shannon McAnulty was assigned to do investigation based on the allegations filed by DCF worker Sandra Fontecchio. Shannon McAnulty did not interview Alex because Norfolk County DA decided to do SAIN interview.

On March 22, 2023, Alex had SAIN through Norfolk County DA Office. During SAIN, Alex showed sex between man and woman per testimony of Walpole PD detective Taylor Bethoney. Per detective Bethoney's testimony at her deposition on 10/19/2023 about SAIN interview on 3/22/2023, Alex 100% observed sexual act between woman and man but what's the source of this knowledge, she has no idea.

On March 29, 2023, the search was executed at Father's home that proved that Father is innocent – forensic examiners from Massachusetts State Police Cyber Crime Unit found family photos and work files and no child pornography as Mother and Sandra Fontecchio claimed. This information was available to detective Bethoney and Norfolk County DA the same day. Sandra Fontecchio admitted at her deposition on August 2, 2024 that Norfolk County DA informed her that nothing has been found to implicate Father. The same information was available to Shannon McAnulty. Per Shannon McAnulty's admission at her deposition, Norfolk County DA Office ADA Christine McMahon Cullinan influenced her to fabricate report and find allegations against Father supported. Shannon McAnulty admitted at deposition that she worked at Norfolk County DA for almost 5 years prior to moving to DCF, knows well ADAs in the office, socialized with ADAs, and is friendly with ADA Christine McMahon Cullinan. In order to support allegations in her 51B report, Shannon McAnulty concealed that nothing has been found during search at Father's home on 3/29/2023 which dispositively exonerated him. She concealed that the source of Alex's exposure to sex was unclear based on the SAIN interview. Shannon McAnulty concealed in her report that Mother urged Alex to make false sexual abuse allegations on 3/2/2023 to sergeant Patrick O'Connor at Walpole PD and Alex denied them despite having this report. Shannon McAnulty concealed in her report that Alex denied Father doing any harm to her on 3/11/2023 to Medfield PD sergeant Garett Ledbetter despite having this report. Shannon McAnulty concealed in her report that Alex was evaluated on 3/11/2023 at Newton-Wellesley Hospital no bruises or marks were found on Alex despite having this report. Shannon McAnulty also fabricated statements of interviewed educational providers in her report. None of the fabricated statements were related to sexual abuse allegations. No independent collateral – educational providers and PCP corroborated sexual abuse or any other allegations. Shannon McAnulty was fully aware that allegations originated from Mother and legitimized by Sandra Fontecchio. These allegations remained isolated to Sandra Fontecchio and Mother. Shannon McAnulty concealed Mother's serious mental illnesses and use of dextroamphetamine by using euphemism "add medication" in her report. Shannon McAnulty's supervisor – Cheryl Banks approved fabrication of 51B report per Shannon McAnulty's testimony at deposition on 7/31/2024. The report was completed on April 5, 2023 and provided to Father during the hearing on 4/6/2023.

On April 6, 2023, Sandra Fontecchio testified in the court to suspend Father's parental rights and prevent him from seeing children on behalf of DCF based on allegations being supported by Shannon McAnulty in her 51B report. Shannon McAnulty who prepared report chose not to testify. Sandra Fontecchio admitted that she did not even read report. DCF worker Sandra Fontecchio concealed from the court at the hearing that allegations originated from Mother and that she legitimized them by filing allegations report. Sandra Fontecchio concealed from the court at hearing that she was aware through Norfolk County DA that search produced dispositive exonerating evidence and there was nothing to support allegations. Father testified to the court that nothing has been found to support allegations as result of search and provided evidence of Mother pressuring children to reverse their allegations against Mother. Judge Lee M. Peterson found allegations supported, stripped Father of parental rights, prohibited him from seeing children for next 18 months, issued restraining order which is still active and prohibited Father's access to children's medical and educational information for next 15 months which prevented Father's ability to do discovery and defend his rights.

Supporting facts:

Per Shannon McAnulty testimony at deposition on July 31, 2023, Shannon McAnulty had worked at Norfolk County DA Office for almost 5 years during this time she established very cordial relationship with ADAs to the point of socializing, going out for drinks after work [3. "Shannon McAnulty deposition dated July 31, 2024", p. 9, 17]:

"A.· I started working at the district attorney's office out of Norfolk County for a week after I graduated up until two years ago when I started the Department of Children & Families."

"Q.· Okay. So you were with the district attorney's office about five years, then; is that right?"

"A.· I think it's under five years."

"Q.· So it's fair to say that you have -- you --you have a very cordial relationship with what's a very small office; is that fair?"

"A.· Yes."

"Q.· Any -- any personal connections with any of them, did you ever go out for drinks or have --·involved socially at all, parties, or just socializing?"

"A.· Yeah, people would go out after work for dinner or out, yeah."

"Q.· Yeah.· So you'd be out, like, with, say, ADAs or other co-workers at -- in that office; is that fair?"

"A.· Yes."

Per Shannon McAnulty testimony at deposition on July 31, 2023, Shannon McAnulty continues to maintain cordial relationship with Norfolk County DA Office [3. "Shannon McAnulty deposition dated July 31, 2024", p. 17]:

Q.· And do you continue to maintain any kind of contact with any from -- anyone from district – from ·the Norfolk County District Attorney's Office?

A.· Yeah.

Per Shannon McAnulty testimony at deposition on July 31, 2023, Shannon McAnulty knows and is a friend with ADA Katelyn M. Jay who is one of the ADAs involved in the case [3. "Shannon McAnulty deposition dated July 31, 2024", p. 18]:

Q.· Are you familiar with an ADA Jay, for instance?

A.· Yes.

Q.· You're friends with her?

A.· Yes, she gets the reports from the department.

Per Shannon McAnulty testimony at deposition on July 31, 2023, Shannon McAnulty knows and is a friendly with ADA Katelyn M. Jay who is one of the ADAs involved in the case [3. "Shannon McAnulty deposition dated July 31, 2024", p. 20]:

Q.· And do you know Christine Cullinan [phonetic] as well?

A.· Yes.

Q.· Friendly with her?

A.· Yes.

Per Shannon McAnulty testimony at deposition on July 31, 2023, Shannon McAnulty and Cheryl Banks supported allegations against Father under influence of ADA Chrstine Cullinan who was lead ADA on the case at that time [3. "Shannon McAnulty deposition dated July 31, 2024", p. 148, 149-150]:

Q.· Was it your recommendation to support this 51A [error, correct 51B]?

A.· No, my supervisor and I talked it out.· And based on the SANE and what they stated that they could be taking out charges, we felt there was enough to support.

Q.· Well, first off, there weren't even charges taken out, right?

A.· I only can report on what, at that time, was told to me. So I can't report on what's happened after my involvement.

…

A.· Also based on -- at that time, the police and the District Attorney's Office were saying that that·could constitute as a crime.

Detective Taylor Bethoney who was investigating these allegations testified that Norfolk County DA Office was in charge of everything and directed actions of Walpole PD and DCF [2."Walpole PD detective Taylor Bethoney deposition dated October 19, 2023", p. 32, 33, 45]:

Q. And is the procedure, is there one person who is in charge of the case and –

A. The District Attorney's office will always be in charge of everything. I can't do a charge. They just tell me what to do and not to do. So, again, we talk, we discuss, and we figure out what plan of action we're going to take and it depends on what it is.

...

A. But that's usually how -- like any time with any type of juvenile sexual assault case I always will just contact the ADA and go from there. Again, it is ultimately their decision to do a SAIN, to not do a SAIN, and they tell us what they want us to do.

Per Shannon McAnulty testimony at deposition on July 31, 2023, Shannon McAnulty agreed with the detective Taylor Bethoney's statement that DA is in charge of everything [3. "Shannon McAnulty deposition dated July 31, 2024", p. 156]:
Q.· But she [det. Bethoney] said the DA is the -- is the one that's in charge there.
A.· The prosecutor?
Q.· Uh-huh.
A.· Yes.

Per Shannon McAnulty testimony at deposition on July 31, 2023 and Walpole PD detective testimony at deposition on October 19, 2023, DCF, Norfolk County DA and police work as a team and share information [3. "Shannon McAnulty deposition dated July 31, 2024", p. 154]:
"And part of being a multi-disciplinary team, everybody is -- we all need to make sure that all the information is shared and that everyone can be on the same page."

Shannon McAnulty knew that allegations originated from Mother who invited DCF worker Sandra Fontecchio to record them to give Mother's allegations legitimacy. Allegations did not come organically from Alex and were stated in presence of Mother at her home while Alex was isolated from outside world. Sandra Fontecchio then filed 51A report [" DCF worker Sandra Fontecchio 51A report dated March 13, 2023", p. 3]:
"[redacted – Sandra Fontecchio] met with the mother, Carolyn Kyrpych, and child on 3/13/2023 as a follow-up to prior concern";
"[redacted - Sandra Fontecchio] asked the child if she wanted to talk about what she talked about with her mother and she said yes".
Shannon McAnulty also knew from DCF records that Sandra Fontecchio already filed 51A against Father on February 24, 2023 simply based on Mother's allegations against Father:
When Dad is angry Katherine goes and hides in a box. Mom said the child disclosed these things and has it on tap. [Redacted] has not yet seen the kids yet. FSS just started.
Shannon McAnulty knew from Sandra Fontecchio's 3/13/2023 51A report that Sandra Fontecchio immediately started eliciting information from Alex upon arrival to Mother's home already knowing what to ask for indicating collusion between Mother and Sandra Fontecchio [20." DCF worker Sandra Fontecchio 51A report dated March 13, 2023", p. 3]:
"follow-up to prior concern";
"[redacted – Sandra Fontecchio] asked the child if she wanted to talk about what she talked about with her mother and she said yes"

Walpole PD detective Taylor Bethoney stated at her deposition on October 19, 2023 that it was only certain that Alex observed sexual intercourse as she could show it [2."Walpole PD detective Taylor Bethoney deposition dated October 19, 2023", p. 46-48]:
A. I think that there were times where she was confused. I think there are some truths to some of this stuff. I remember thinking that she is definitely confident in some of these statements. And then there was times where I don't know if she wasn't sure what she was saying. I think that there was confusions on both sides. But there were points where I do believe what she said 100 percent. And there are times where I think she may have been confused.
...
Q. Yeah. And your personal -- do you recall those times that you thought she was confused anything jumps out at you?
...

Q. Okay. Anything else?
A. During some of it when she had actually used items like the markers to attempt to show what sex was. You know, that's something where her age shouldn't know what that is. So, obviously, she had to have learned that somewhere. I don't know where. There were parts where she definitely was exposed to things that she shouldn't have been exposed to at six years old. Again, from who, I have no idea.

Shannon McAnulty conceals that multiple sources stated that Alex did not have bruises or marks which would support reason of why Alex is scared of Father and does not want to see him:
3/1/2023: Memorial school principal ["Memorial school principal Melissa Bilsborough 51A report dated March 1, 2023"]:
"Reporter stated the child has not been observed to have marks or bruises";
3/11/2023: Medfield PD ["Medfield PD 51A report dated March 11, 2023"]:
"[redacted] stated the children did not appear to have marks or bruises.";
3/11/2023: Newton Wellesley Hospital ER ["Alex visit to Newton Wellesley Hospital ER medical notes dated March 11, 2023"]:
"Integumentary System Assessment: Absence of any lesions, bruises, rashes, or other skin conditions";

Shannon McAnulty conceals that Alex denied on 3/11/2023 to Medfield PD that Father harmed her in any way:
"[redacted] stated that he doesn't harm her in anyway, but [redacted] can't tell me the reason why doesn't like going there."

Shannon McAnulty testified at deposition on July 31, 2024 that she had no concerns about Father's credibility ["Shannon McAnulty deposition dated July 31, 2024", p. 126]:
Q.· He answered all of your questions fully and --·and you didn't have any questions -- you didn't have ·any concern about his credibility, right?
A.· No.

Shannon McAnulty was aware from Walpole PD sergeant Patrick O'Connor's report which she personally obtained on the morning of March 20th 2023 before SAIN interview that Alex was brought to Walpole PD on 3/2/2023 (Thursday) by Mother at 10:15 pm to make false sexual abuse allegations against Father which Alex denied. It was noted multiple times by sergeant O'Connor that Mother urged Alex to make allegations ["Walpole PD sergeant Patrick O'Connor incident report 23WAL-287-OF dated 3/2/2023"]. Shannon McAnulty concealed this information:
Carolyn asked Alexandra what she wanted to "tell me".
Alexandra was initially reluctant to speak with me however given time she became comfortable to communicate after Carolyn's urging;
Alexandra again stopped speaking and Carolyn urged her to keep speaking and to "tell me everything";
When asked if anything happened in the shower Alexandra stated only that her father would "rub soap out of her eyes for her" while in the shower;
Alexandra stated that her father does not touch her when they sleep in the same bed, advising that they just go to sleep;
Alexandra made no mention of any type of physical touching of any sort during this conversation;
Alexandra did not report any type of sexual abuse or sexual touching of any kind;

DCF worker Shannon McAnulty had information available to her through Norfolk County DA and Walpole PD that Father has no history of violence or criminal involvement ["Massachusetts State Police Operations Plan dated 3/29/2023"]:
Kyrpych does not have a BOP [Board of Probation record, i.e. criminal record]
Kyrpych does not have a III [Interstate Identification Index, i.e. national criminal record FBI's National Crime Information Center]
Kyrpych does not have a history of violence
No indication of firearms

DCF worker Shannon McAnulty had information available to her through Norfolk County DA and Walpole PD

that Father search warrant executed at Father's home did not find any evidence to support the following allegations:
INDECENT A&B ON CHILD UNDER 14, 265/13B/A
PHOTOGRAPH SEXUAL OR INTIMATE PARTS OF CHILD, DISS, 272/105/D
WITNESS/JUROR/POLICE/COURT OFFICIAL, INTIMIDATE, 268/13B/A
CHILD PORNOGRAPHY, POSSESS, 272/29C/A


3. False testimony, manipulation, and obstruction of due process by DCF workers Sandra Fontecchio and her supervisor Steven F. Ruscio during the hearings on 4/6/2023, 7/5/2023, 9/6/2023, 5/13/2024 to prevent Father from seeing children and violation of DCF reunificatoin policy

3.1. Sandra Fontecchio's lies by omission and commission, and violation of DCF reunification policy at the hearing on 4/6/2023:

3.1.1. On April 6, 2023, Sandra Fontecchio testified in the court to suspend Father's parental rights and prevent him from seeing children on behalf of DCF based on allegations being supported by Shannon McAnulty in her 51B report. Sandra Fontecchio concealed from the court at hearing that she was aware through Norfolk County DA that search produced dispositive exonerating evidence and there was nothing to support allegations.

3.1.2. On April 6, 2023, DCF worker Sandra Fontecchio concealed from the court at the hearing that allegations originated from Mother and that she legitimized them by filing allegations report.

3.1.3. On April 6, 2023, DCF worker Sandra Fontecchio lied at the hearing that children were not coached – she admitted later at deposition that she had no qualifications to make such determination and violated scope of service under her licensing as per 258 CMR 12.04.

3.1.4. On April 6, 2023, DCF worker Sandra Fontecchio lied at the hearing that there are no substance abuse concerns with respect to Mother. At deposition, she admitted that she had no qualifications to make such statement. She also violated scope of her service under social worker associate license as per 258 CMR 12.04.

3.1.5. On April 6, 2023, DCF worker Sandra Fontecchio testified in the court to suspend Father's parental rights and prevent him from seeing children on behalf of DCF which was violation of DCF policy requiring immediate reunificatoin of separated parent and child under supervision.

Supporting Facts:

Sandra Fontecchio admitted at deposition on August 2, 2024 that she was aware that nothing was found to support allegations against Father by the Norfolk County DA, yet she concealed this information from the court and testified at the hearing on 4/6/2023 that allegations are supported and Father not to see children ["Sandra Fontecchio deposition dated August 2, 2024", p. 198]:
Q.· ·Do you know when that search warrant – or that -- that search took place?
A.· ·I don't know when it did, but I know that it ·did.
Q.· ·And how did you become aware that there was a -- a search of -- of my client in the children's home?
A.· ·I think the DA informed me.
Q.· ·Okay.· Who?
A.· ·I don't -- I don't remember if it was Deanna -- Deanna.
　　　…
Q.· ·Okay.· And what is your understanding as to the outcome of the -- of that search?
A.· ·They didn't find any pornography on the computer.

DCF worker Sandra Fontecchio concealed at the hearing on 4/6/2023 that she was prompting Alex during her meeting with Alex and Mother on 3/13/2023 and she received questions from Mother who told her what to ask

Alex. Sandra Fontecchio's statement at deposition on August 2, 2024. She also admitted that she is not surprised that all allegations are sourced back to Mother which is indication of coaching by Mother of which Sandra Fontecchio was aware from the beginning but was stating that children are not coached. Sandra Fontecchio was legitimizing Mother's allegations with DCF's credibility ["Sandra Fontecchio deposition dated August 2, 2024", p. 137, 138, 237]:

Q.· ·So in fact, this wasn't Alex offering an unprompted claim to you. This was in fact you prompting Alex. Wouldn't you agree, based upon this dictation which you said was your own writing, yes or no?

A. Yes. I asked her those questions, yes.

...

Q.· ·Well, why would you have asked Alex if she has ever taken a shower with her dad?

A.· ·Because I know that her mom had expressed concerns that Alex was talking to her about things that her dad —

Q.· ·Oh, so that's different now, isn't it?

A.· ·Well, I followed the --

Q.· ·Well, you never mentioned that piece of it before I just read this to you, did you?

p. 138

A.· ·I didn't know.

Q.· ·So you are -- exactly.

A.· ·Yes.

Q.· ·You are now.

A.· ·Yes.

Q.· ·So for the first time --

A.· ·Right.

Q.· ·-- we're hearing that -- that kind of a claim is sourced back to Mother; isn't that right?

A.· ·Yeah.· She --

4/6/2023: Sandra Fontecchio's testimony during the court hearing [April 6, 2023 Family court hearing transcript, p. 9]:

Q. And in speaking with Alex, did you, again, based on your training and experience, was it your impression that she had been coached by mom in any respect?

A. No. No.

Sandra Fontecchio admitted during her deposition on August 2, 2024 that she cannot provide criteria to determine if child is coached, nor she has any specialized training or expertise and then admitted she does not know if a child was coached [Exhibit "Sandra Fontecchio deposition dated August 2, 2024", p. 114-115, 48, 118]:

Q.· ·Well, you can think that a child is coached, but you really don't have the -- you don't have any sort of educational background or course or specialized training, right?

A.· ·I believe through my -- I believe through my work at DCF, I do.· That's my knowledge through all the years at DCF.

Q.· ·So what is the criteria to be able to determine whether a child has been coached by a parent?

A.· ·I can't tell you the criteria. I can tell you that in speaking to collaterals, which that is what I did in this case, with Alex.

Q.· ·I'm asking more -- I'm asking more generally.

A.· ·Okay. In general, you want to know? I can't give you the criteria.

...p. 48

Q.· ·What trainings have you had specifically in child psychology while working at DCF?

A.· ·I don't recall.

Q.· ·What did you learn from those trainings?

A.· ·I can't answer that.

...p. 118

Q.· ·So you're saying, No, you don't believe the children have been coached?

MS. BIALONCZYK [Ryan Faenza Carey PC]:· Objection.

THE WITNESS:· I'm saying I don't -- I don't know.· I guess that's my answer.· I don't know.

Q.· ·So you if you're -- you're trying to change your answer now?
A.· ·Yes.· I'm saying I don't know.· If you're asking me 100 percent if I know, I can't say 100 percent.

8/2/2024: At deposition, Sandra Fontecchio admitted that she has not qualification to determine if someone is abusing substances [Exhibit "Sandra Fontecchio deposition dated August 2, 2024", p 48, 55, 205]:
Q.· ·What specialized training do you have in relation to addiction?
A.· ·I don't have any specialized training.
Q.· ·And what specialized training do you have in relation to adult mental health?
A.· ·So I don't have specialized training. I have my ongoing experience as an ongoing social worker with the department. That's what I have, is my experience.
Q.· ·Now, what is your specialized training in the area of alcoholism?
A.· ·Again, I don't have specialized training.
Q.· ·What is your specialized training area of prescription drug abuse?
A.· ·I don't have specialized training.
Q.· ·Now, are you -- you had testified earlier that you had no concerns about substance use with Mother. · Do you remember that testimony?
A.· ·No.· No current substance use, yes.
Q.· ·Right.
A.· ·Yeah.

Violated Massachusetts reunification policy that requires immediate reunification of children and parent by recommending no contact at every single hearing: 4/6/2023, 9/6/2023, 5/13/2024 ["Sandra Fontecchio deposition dated August 2, 2024"]:
p. 264, r16-23
Q.· ·And to clarify the position of no contact between father and these two girls --
A.· ·Right.
Q.· ·-- is your personal position, not a position of DCF as an agency, correct?
A.· ·No.· Well, my supervisor approved when I wrote my assessment. He -- the recommendation is in ·there.· So I think he would support that, the agency.
p. 268, r18-22
Q.· ·Right.· But that's your personal position. ·That's not the position of the department.
A.· ·I don't know if it's the -- I don't know if it's -- when you're saying the department, I am the·department.
p. 41, r1-13
Q.· ·But I'm asking you, more broadly, what is the reunification policy that the department has issued?
A.· ·I can't answer you the -- the policy – what you're -- I can't that question.
Q.· ·Are you aware that there's a policy?
A.· ·Yes.
Q.· ·But you -- but you don't know what the policy is?
A.· ·I can't specifically answer your question, no.
Q.· ·But I'm asking if you know what the policy is, and you're saying, No; is that correct?
A.· ·I'm saying no.
p. 43, r1-8, r15-19
Q.· ·So are you aware that family separation means any time a parent and a child may not be in contact?
MS. BIALONCZYK:· Objection.
THE WITNESS:· I can't answer that question.
Q.· ·What reunification training have you done through DCF?
A.· ·My ongoing experience, my training.
…
Q.· ·Are you aware of some -- are you aware of conscious bias?
A.· ·I haven't had a -- I haven't had any specific training.· My experience is my training.· My cases are my training.

3.2. Steven F. Ruscio lies and violatiion of DCF reunification policy at the hearing on 7/5/2023:

3.2.1. Steven Ruscio testified on July 5, 2023. He provided false testimony during the hearing that DCF investigation (51B) with respect to Katherine was supported while it was unsupported as of 6/22/2023, he was fully involved in this investigation by sitting on screening meetings and providing comments.

3.2.2. Steven Ruscio recommended no contact between Father and children thereby violationing DCF reunification policy.

Supporting Facts:

False testimony in the court ["July 5, 2023 Family court hearing transcript", p. 13, r5-6]:
- "DCF: Thank you for holding. So I'm going to transfer your call over to Steve Roucheo [Ruscio]";
- "There was a more recent one that talked about the younger child, Catherine [misspelled by transcriber], I believe, alleging some type of penetration with digits. So I believe that one was still being worked on. I'm trying to look to see if that's been completed at this point in time. I believe it has, that it was supported, but there was another 51A that rolled into (indiscernible 10:43:47) similar situation." ["July 5, 2023 Family court hearing transcript", p. 14, r6-12];
- MR. NISSENBAUM: Are you able to elaborate further on the allegations regarding Catherine [Katherine]? ["July 5, 2023 Family court hearing transcript", p. 15, r21-22]
- DCF: Hold on one second. I am not. I cannot talk any further about the active investigation or the most recent one. ["July 5, 2023 Family court hearing transcript", p. 16, r1-2]


3.3. Sandra Fontecchio lied by commission and omission and violated DCF reunification policy at the hearing on 9/6/2023:

3.3.1. Sandar Fontecchio concealed from the court that Norfolk County DA Office dropped the case against Father while being informed by the Norfolk County DA Office on or before August 11, 2023.

3.3.2. Sandra Fontecchio lied that Alex disclosed sexual abuse to her directly in the July of 2023 while her 51A filing dated 7/3/2023 show that it was Mother who called her and made new allegations of sexual abuse of Alex by Father. The allegations also were known to be false at that time as sexual abuse evaluation by Dr. Svendsen on May 10, 2023 confirmed that both chidlren are healthy and there is no signs of sexual abuse. Sandra Fontecchio knew this as she was in cosntant contact and was well aware of evaluation done by Dr. Svendsen.

Sandra Fontecchio made the following statement at the hearing on 9/6/2023 ["September 6, 2023 Family court hearing transcript", p. 31]:
- "She disclosed to me during the summer and to two therapists that her father had sexual intercourse with her and described in detail the incident."
- "So she's disclosed this to myself."
Sandra Fontecchio filed 51A on 7/3/2023 that shows the following:
"The reporter alleges the sexual abuse of 7-year-old Alexandra Kyrpych by the father"
"[Redacted] got a call from the mother last night, 7.2.2023, but did not respond until today, 7.3.2023."
"The mother stated that the child reported the father had penetrated the child's vagina with his penis."

3.3.3. Sandra Fontecchio lied that Alex disclosed sexual abuse to Memorial school guidance counselor Kathleen Bockhorst
Sandra Fontecchio made the following statement at the hearing on 9/6/2023 ["September 6, 2023 Family court hearing transcript", p. 37 r12-17]:
- "She also, when she was in school, spoke about it to her school counselor, you know, before school ended. And they were aware of, you know, her disclosures.  From the time she was in school throughout the summer she's been consistently reporting sexual abuse by her father."

School guidance counselor did not file 51A with sexual abuse allegations based on Alex' statements against

Father. School guidance counselor Kathleen Bockhorst stated at deposition on 3/21/2024:
P. 125, r16-19
Q.· ·And how many times have you spoke with Ms.Fontecchio?
A.· ·One.· I don't recall another phone ·communication with Ms. Fontecchio.
...p. 151, r4-8
Q.· ·And I don't mean to put you -- find a point ·in this, but it's an important point.· The last contact ·you had
with -- with DCF, do you recall, would have ·been with Ms. Fontecchio in May of 2023, correct?
A.· ·To the best of my recollection.
...p. 124 r16-24
A.· ·I was asking, is this new information or is this something people are aware of? ·So Alex had said to me,
that's the person who ·threw the knife. ·I called DCF to say, is this new information? And let's see if there's been
a call to Sandy Fontecchio. Spoke to Sandy Fontecchio, also of DCF, on the 15th.· Call involved case, also
district attorney involved. Father threw a knife, eat butter oil.

Sandra Fontecchio's own notes for the only call on 5/16/2023 with Kathleen Bockhorst show that Alex did not
tell Kathleen Bockhorst that Father sexually abused her and therefore Kathleen Bockhorst did not share with
Sandra Fontecchio that Alex was abused sexually by Father [Sandra Fontecchio notes dated May 16, 2023, p.
13].

3.3.4. Sandra Fontecchio lied that Alex disclosed physical abuse to her.

Sandra Fontecchio filed 51A on 3/13/2023 stating there is no bruises or marks and no disclosures of physical
abuse by Father. Father has not seen Alex since 3/8/2023. Sandra Fontecchio was informed by Memorial school
on 3/1/2023 that there were no bruises observed on Alex, DCF had report from Newton-Wellesley Hospital
dated 3/11/2023 where they established that Alex had no bruises, DCF had report from Medfield PD dated
3/11/2023 where sergeant G. Ledbetter stated he did not observe any bruises on Alex ["September 6, 2023
Family court hearing transcript", p. 32]:
"She's also disclosed physical abuse by her father.  That he would kick and punch her in the stomach."
Sandra Fontecchio note dated 3/13/2023:
"No visible marks or bruises on Alex";
Memorial school principal Melissa Bilsborough 51 filing dated 3/1/2023:
"Reporter stated the child has not been observed to have marks or bruises..."
Medfield PD 51A filing dated 3/11/2023:
"[redacted] stated the children did not appear to have marks or bruises."
Newton-Wellesley Hospital ER department evaluation of Alex on 3/11/2023:
Skin is intact except if noted in an LDA; Absence of any lesions, bruises, rashes, or other skin conditions;
Mother report no physical or penetrative abuse to Newton-Wellesley Hospital ER staff:
"There is no reported physical or penetrative abuse..."

3.3.5. Sandra Fontecchio lied that Katherine was sexually abused by Father. Sandra Fontecchio was fully aware
that both DCF found allegations of sexual abuse of Katherine unsupported on 6/22/2023, and DA informed her
between August 2 and 11 that they dropped case aginst Father as Katherine's SAIN interview on 8/2/2023
showed that she was coached. She also knew that Dr. Svendsen evelution did not support sexual or physical
abuse allegations. Sandra Fontecchio also knew that Katherine did not disclose to anyone directly, but
"disclosures" orginated from Mother again as DCF 51B report date 6/22/2023 shows.

Sandra Fontecchio statement at the court hearing ["September 6, 2023 Family court hearing transcript", p. 32
r24-25, 33 r1-3]:

"Her sister [Katherine] also disclosed -- has disclosed that, you know, the father would, you know, put his
fingers in her bottom.  She told me that in July.  She disclosed that before July but, you know, she also told me
that during my visit with Alex in July."

8/11/2023 DCF Screening meeting ["Donna Madoff 51A report dated August 10, 2023", p. 18]:

"Supervisor Ruscio said the ongoing worker [Sandra Fontecchio] spoke with the district attorney, who is dropping the criminal case against the father because not enough information was provided at the two SAIN interviews."

8/2/2024 Sandra Fontecchio stated at her deposition ["Sandra Fontecchio deposition dated August 2, 2024", p. 194 r2-7, r12-22]:
Q.· ·But you know, that -- that Katherine had a SAIN interview in August of last year and nothing that she said aligned with anything that was being alleged. You realize that, right?
A.· ·Yes.· I also know that she was four at the ·time, maybe, four or three at the time.· So –
  ...
Q.· ·Did you report to that SAIN interview?
A.· ·I spoke -- I spoke to them about the interview.
Q.· ·Who did you speak to?
A.· ·I -- I forget the person's name, but I spoke to them about –
Q.· ·Who were they from?
A.· ·I had -- it was the DA.· I can't remember who it was, but they told me that it wasn't, you know -- basically, that she didn't disclose during the SAIN ·interview.· I remember that.

Sandra Fontecchio was also fully aware that allegations of sexual abuse of Katherine are coming from Mother but lied that Katherine disclosed to her directly those allegations ["DCF worker Danielle E. Czekanski 51B report dated June 22, 2023", p. 14, 17]:

"There is a current open response due to the 3-year-old child reporting to her mother, on the way to therapy, that she was also touched by her father."
"Supervisor agrees with the decision to UNSUPPORT the allegations of physical and sexual abuse of Katherine by her father at this time."

3.3.6. Based on these lies Sandra Fontecchio recomended Father not seeing children which was violation of DCF's policy of immediate reunification.

3.4. Sandra Fontecchio concealing at the hearing on 5/13/2024 that DCF area program manager raised concerns repeatedly in November of 2023 that Alex was coached by Mother to make all these sexual abuse allegations.

3.5. Sandra Fontecchio again violated DCF reunification policy on May 13, 2024 by recommending no contact with Father while DCF case was closed by senior management and she no longer represented DCF and knowing that DA dropped the case, children are healthy.


4. Collusion between DCF worker Sandra Fontecchio, Mother, Ryan Faenza Carey PC and Judge Lee Mumford Peterson. Sandra Fontecchio lied at her deposition that she was not in contact with Mother since January 2024. Ryan Faenza Carey PC obsturcted justice by preventing Mother from providing subpoenaed communication between Mother, DCF workers, Norfolk County DA, Rachael Anne Sullivan. Judge Lee M. Peterson engaged in direct communication with Sandra Fontecchio through her personal cell phone and was arranging her testimonies in the court where Sandra Fontecchio committed multiple perjuries used to justify orders by Judge Lee M. Peterson to prevent Father from seeing his children.

Mother stated at deposition that Ryan Faenza Carey PC arranged testimony of DCF worker Sandra Fontecchio during family court hearings who committed multiple perjuries against Father.

Judge Lee M. Peterson specifically demanded Sandra Fontecchio to testify as she was not satisfied with testimony of DCF worker Steven Ruscio who did not lie aggressively during the hearing on July 5, 2023 [Mother deposition dated August 20, 2024, p. 258, 259]:

Q. DCF closed your case in January of 2024. Did you have any contact with -- did you have any contact with Sandra Fontecchio after January 2024?

A. I think there were some times when I would see if she -- like, if Judge Peterson wanted her to be available, I would -- or we would reach out to see if she would be available.

Q. You would reach out to Sandra Fontecchio?

A. Or, I think, Andy to make sure she was available for the -- whatever for -- for court, but I haven't talked to her.

Q. When you say Andy, are you referring to your attorney?

A. Yeah. [Andrew Sparks with Ryan Faenza Carey PC]

Q. Okay. · So is it your testimony today that you -- mind you, we've -- we've already deposed Sandra Fontecchio. · Is your testimony today you've not had any communication with Sandra Fontecchio since January of 2024?

P. 259

A. I -- I can't say. Maybe I shot an e-mail saying we have court this date, would you be able to --would you be available? I -- I -- beyond that, I don't know.

Q. Why would you have done that?

A. Because Judge Peterson was upset one time when she was not available, so I wanted to make sure that she was available. [Carolyn is referring to July 5, 2023 hearing when DCF worker Steven Ruscio testified which was not very convincing]

Q. But didn't you just say that your attorney, Andy, would be the person to contact Sandra Fontecchio?

A. Yeah. I mean, someone in his office. I -- I think one time when we were at court and the computers were down, I texted her saying, The computers are down, I don't know if we're going to have a hearing today, but that was --

Q. So you have her in your cell phone?

A. Yeah.

Q. Do you text with her?

A. No. Like, I mean, I can. I don't text with her on a regular basis.

Q. Can you pull up your -- the last text communication you had with her, if you just created, like, a new text, you know, to show the chain.

P. 260

A. Uh-huh. Hi Sandy, will you be going to the deposition tomorrow? If so, my lawyer may need – if so, my lawyer may need to go. Please let me know so I know someone should be there.

A. [Sandra Fontecchio's answer to Mother] I informed the attorney I'm available Friday at 8 a.m. Like, that was July 30th. [2024, Sandra Fontecchio's deposition was scheduled for July 30th but later was rescheduled to August 2nd]

Q. Okay. So that was about three weeks ago.

A. Okay.

Q. What attorney did you inform you're available at 8 a.m.?

A. I confirmed the -- I informed the attorney I'm available. So she must have informed someone at the office [Ryan Faenza Carey PC] that she's available at 10 a.m.

Q. I'm sorry. So let's break that down. What's the -- what did you send to Sandy on that day?

A. That -- Hi, Sandy. Will you be going to the deposition tomorrow? If so, my lawyer may need to go. I think that's a typo. Please let me know. I know if some of -- so I know some of my lawyers should be there. Thank you. There's typos in there, so I don't –

P. 261

Q. That's what you sent to her --

A. That's what I sent.

Q. -- on July 30th?

A. Yeah. I informed -- and then she responded, I informed the attorney I'm available Friday so was planning to be then at 10.

Q. Anything below that?

A. Have they responded to confirm? And then I spoke to the office this morning, so I assume it's all set, but you can confirm. That's it. No other --no

DCF worker Sandra Fontecchio lied at her deposition on August 2, 2024 that she had not communicated with Mother since time the DCF case was closed which was on January 5, 2024 [Sandra Fontecchio deposition dated August 2, 2024, p. 236]:

Q.· ·Okay.· And so what was the last communication you had with Carolyn Kyrpych?
A.· ·Well, I told -- I told her that the case was closing. You know, that basically, the case is closing.· The girls are with her.· You know, and --
Q.· ·When did -- when did you inform her of that?
A.· ·I think in January.· I don't know the date, but I informed her then that the case is closing [DCF case was closed on January 5, 2024], that the management made a decision that it has to be – you know, they wanted it closed.

Discussion between Mother and Sandra Fontecchio of the upcoming July 12, 2024 hearing at Dedham District Court where Mother obtained ex-parte restraining order against Father and two-way hearing was scheduled for July 12, 2024 [Mother deposition dated August 20, 2024, p. 261]:

Q. Okay. What's above that?
A. Hi, Sandy. I have court at 9 o'clock. Would you be available if the judge wants to speak to you?
Response: I am not available. I have meetings morning, afternoon. I need to plan in advance for court. I will be retiring in August.
Q. What date is that?
A. July 5th.

Discussion between Mother and Sandra Fontecchio of the June 27, 2024 hearing at Norfolk Probate and Family Court where Father was requesting supervised visitation with children and lifting restraining order. Judge Lee M. Peterson interrupted morning hearing and rescheduled it to 2pm but Sandra Fontecchio did not testify at the hearing at 2pm [Mother deposition dated August 20, 2024, p. 262, 263]:

Q. July 5th. Okay. And what was the communication before that?
A. June 27th. It's all about -- The Court wants to call you.
Her response: I'm not available until 1 or possibly later.
My response: The Court will call you at 2 today.
Her response: What is the hearing? I received no prior notice. I'm only available until 2:30.
My response: Same thing, over and over. Wants to restore legal custody and start supervised visitation.

June 21, 2024: Discussion between Mother and Sandra Fontecchio of upcoming June 27th hearing [Mother deposition dated August 20, 2024, p. 263]:

Q. That's a June 27th exchange? What's the exchange before that?
A. Again, the Court.
Q. On what date?
A. June 21st, Sandy [Sandra Fontecchio], 8 a.m. I'm not sure if the Court has made you aware, but they want to go back on the 27th of June, next Thursday.
P. 263
[Sandra Fontecchio's response:] Didn't receive notification.
[Mother:] Don't know why I have to tell you, because they always seem to want --again, I -- I don't know why they don't tell you because they always seem to want to talk to you.
[Sandra Fontecchio:] Are you available for a call? All of these are just, I'm at the court, I'm going to court, are you going to be available for a call?
Q. Anything else on that date?
A. No.

Before 4/4/2024: Discussion between Mother and Sandra Fontecchio about the upcoming April 4, 2024 hearing at Norfolk Probate and Family Court [Mother deposition dated August 20, 2024, p. 263, 264]:

Q. Before April 4th, what's the next exchange?
A. The hearing for the renewed restraining order is 4-4. Can you be available?
[Sandra Fontecchio] The Court has to request it since the case is closed for your attorney.

2/7/2024: Discussion between Mother and Sandra Fontecchio about the hearing on February 7, 2024 [Mother deposition dated August 20, 2024, p. 264]:
Q. What other exchanges before that?
A. Hey, the court system is down. I'll let you know when it's get -- when you get called in. Is this the best number to call you on?
She says: No. They have my personal cell.
And then I said -- either -- either number is okay.
And then I said, Okay, the court system is down statewide.
Q. Date?
A. February 7th.

2/1/2024: Discussion between Mother and Sandra Fontecchio about the upcoming hearing on February 7th, 2024 [Mother deposition dated August 20, 2024, p. 265]:
A. Just want to follow up and make sure you'll be available for -- at 9:30, February 7th. I was told that you were -- were subpoenaed and I want to make sure you are by -- available by phone.
I will be available by phone.
Q. What -- what date was that?
A. February 1st.

1/4/2024 or before: Discussion between Mother and Sandra Fontecchio about the upcoming hearing on January 8th, 2024 [Mother deposition dated August 20, 2024, p. 265, 266]:
Q. How about before that?
A. Hi, Sandy. Is there a final report for the case?
[Sandra Fontecchio] The case is not closed yet but will on January 5th. The assessment was complete. I updated it, which is the same information recommended for no contact with the children's father. If they need me on Monday [January 8th, 2024], you'll need to notify your attorney to contact me.

Ryan Faenza Carey PC obstructed justice by preventing Mother from providing subpoenaed communications between Mother and DCF workers, DA, and Rachael Downey Sullivan, Siobhan Cullinan O'Maley, Jessica Grant sent to Mother on April 4, 2024 with a due date of May 4, 2024 [Mother deposition dated August 20, 2024, p. 294, 295; Father's requested for production of documents dated April 4, 2024]:
MR. DOMBROSKI: Just to put it on the record, two things that we need: Overdue communications that we were -- we had been in court on back on the 17th of July, due by August 17th.
THE WITNESS: Yeah.
MR. DOMBROSKI: You'll have those for your attorney it sounds like by tomorrow, you had committed on the record. So if you can make sure those get to us by tomorrow from your attorney. Also, the request for production of documents you said you were going to speak with your attorney on. I'll remind you that they were due back on May 4th, so ·that makes them --
THE WITNESS: Yeah.
MR. DOMBROSKI: -- at this point, near --almost four months late. So we need them immediately. So I'll talk to your attorney about that.
THE WITNESS: And this -- yeah. This the first time I'm seeing it, so.
MR. DOMBROSKI: Well, that's between you and your attorney --
THE WITNESS: Yeah.
Ryan Faenza Carey PC and Mother never produced these documents.


Brian Divasta sent the following message to Mother on 11/20/2022 with respect to their attorney Ryan Faenza Carey PC [Mother text messages with Brian Divasta dated November 20, 2022, p. 244]:
Carolyn. You are not in this alone. You have support from ma and your parents, emotionally and financially. It is worth settling this now so you don't have to continue to fight him. But we need a lawyer to help make this next fight the last one.

Kara Carey – lead partner at Rayn Faenza Carey PC - worked as intern at Norfolk Probate and Family Court where she was hired by her relative Paula Carey (former Chief Justice at Norfolk Probate and Family Court). Later, as a Trial Court Chief Justice Paula Carey has appointed her relative Kara Carey to Massachusetts Trial Court Child Support Guidelines Task Force. Kara Carey also personally involved with DCF through charity work;

On June 15, 2023, exchange between Mother and Brian Divasta [Mother text messages with Brian Divasta dated June 15, 2023, p. 413]:
Mother: Signs -Three large rolling laughs.
Mother: Yaroslav has his DCF appeal hearing today
Brian Divasta: Right...I assume you'll hear from one of your contacts there?

5. Judge Lee M. Peterson denied Father's due process rights but not allowing him to present his facts fully by limiting his time which prohibited him from bringing many relevant witnesses to testify [Trial at Norfolk Probate and Family Court, Day 1, 9/3/2024, p. 14 r14-20, Father's motion to add trial dates dated August 2, 2024]:

THE COURT: Okay. I'll just be clear. I appreciate that, you know, if you're doing a private adjudication, you may have, you know, 30 days to do so. This is -- we have limited resources here, limited time to hear things. And twelve and a half hours each is what you have. Okay.
MR. DOMBROSKI: Limited resources cannot stand in the way of justice, Your Honor.

6. Judge Lee Mumford Peterson falsifies her Findings of Fact to conceal psysical injuries and illnesses developed by children while in sole Mother's custody [Lee M. Peterson's Findings of Fact, item 14, p. 17].

"The Court finds that the children are in good physical health, and there is nothing significant in either of their medical histories absent each having a diagnosis of molluscum contagiosum and adenoid removal in April 2024."
Medical notes presented to Lee M. Peterson show that Alex broke her wrist on 1/12/2023, sprained her thumb on 2/27/2023 while in Mother's custody;
Both Alex and Katherine had partial loss of hearing – 85-90% of normal level and went through two surgeries before restoring hearing;
Alex developed chronic constipation, had to be forcibly cleaned and is continuously on laxative;

7. Judge Lee Mumford Peterson conceals Mother's serious mental illnesses which she is diagnosed and prescribed psychotropic medications of Major Depressive Disorder, Generalized Anxiety Disorder representing them as benign mental health conditions and omits Psychophysiological Insomnia. Mother's herself admitted to having Major Depressive Disorder at trial and nurse prescriber notes reviewed by Lee M. Peterson list all diagnoses and psychotropic medications. Eventually, Lee M. Peterson presents these mental illnesses as short-term, temporary situation [Lee M. Peterson's Findings of Fact, item 37, p. 22, p. 62]:

Mother has a history of anxiety, depression, attention deficit disorder (hereinafter "ADD"), and PTSD. Rather, the Court finds that Mother's conditions generally do not affect her functioning in a way that negatively impacts the children, and to the extent that they do, any presently reduced functioning is a short-term effect of this litigation.

8. Judge Lee Mumford Peterson falsified Findings of Fact by including fabricated statements of Dr. Shapse report to conceal Mother's neurocognitive impairment related to drug abuse. Judge Lee Mumford Peterson concealed that Mother's SASSI-4 testing showed "high probability of substance abuse". Judge Lee Mumford Peterson includes fabricated statements from Dr. Shapse report that simply does not exist in it to obscure actual evaluation that is very negative of Mother and exposes serious mental health symptoms:
Dr. Shapse's report:
"Screening for neurocognitive issues revealed a potentially mild impairment. Neurological symptoms were also

noted on the MMPI-3. Such impairment could be due to a head injury, the effect of prolonged use of alcohol or drugs, a disease process or deterioration due to aging or other causes. Problems in Comprehension, Similarities (though on the WAIS-IV this was not an issue) and Attention-Tracking were noted."

She additionally admitted to difficulties in some areas of executive functioning on the Brown. This suggests a pervasive self-regulatory problem in these domains whose etiology may be related to the above noted neurocognitive issues. Specifically, she indicated difficulties in Memory, Focus and to a somewhat lesser extent, Effort.

Lee M. Peterson's Findings of Fact [Lee M. Peterson's Findings of Fact, item 40, p. 22]:

Dr. Shapse's report ultimately concluded that Mother "has 'some deficits in executive functioning and minor neurological problems which may interfere [with] . . . her organizational capabilities and difficulty focusing and concentrating.'


9. Judge Lee Mumford Peterson concealed sexual abuse of children under influence of stimulant drugs by Mother and her partner Brian Divasta:

Lee M. Peterson was informed through report dated May 4, 2023 by Dr. Steven Shapse that Mother has high probability of substance abuse based on psychological evaluation conducted by Dr. Steven Shapse.

Lee M. Peterson was informed by addiction medicine expert Dr. John Eustace through his report that Mother's behavior as observed by children is consistent with using dextroamphetamine in abberant manner [Dr. John Eustace report dated May 5, 2024, p. 5].

Lee M. Peterson was informed by addiction medicine expert Dr. John Eustace through his testimony at trial on September 6 and October 10, 2024 that children's observation of sex between Mother and Brian Divasta is consistent with side effects of psychomotor stimulant drugs - hypersexuality driven by disinhibition.

Lee M Peterson was presented with Mother's own recording of younger daughter Katherine who repeated to Mother multiple times that she saw her dancing naked despite Mother's attempt to confuse Katherine into saying No

Lee M. Peterson was informed that Mother's partner Brian Divasta has substance use disorder involving cocaine and alcohol with relapses


10. Judge Lee Mumford Peterson concealed misconduct by DC worker Sandra Fontecchio and ADA Christine McMahon Cullinan of which she was repeatedly informed by Father.

11. Norfolk County DA Office (team of ADAs led by Christine McMahon Cullinan and represented at the hearing by ADA Kelly) comitted perjury during the hearing on 9/6/2023 by lying that they are still investigating Father in order to prevent his access to evidence - SAIN videos of Father's children - that was used against him by DCF and he is entitled to as part of due process. This perjury was done in cordination with DCF (Sandra Fontecchio) who also lied that ther is investigation open and Ryan Faenza Carey PC who also knew that investigation was over and knowingly lied. Judge Lee Mumford Peterson also knew about this lie as she had direct off-record, personal communication with Sandra Fontecchio through her personal cell phone.

The SAIN interviews were allowed to be shared with Father by DCF Fair Hearing Unit in January 2024 with a due date of February 20, 2024. Norfolk County DA refused to comply. Father's attorney issued subpoena for these records in December of 2024 - Norfolk County DA still did not comply.

12. Norfolk County DA Office concealed during hearing on 9/6/2023 SAIN interview of Katherine on 8/2/2023 and that it showed that she was coached.

13. ADA Christine McMahon Cullinan concealed conflict of interest - her relative Siobhan Cullinan O'Malley

were Katherine's caregiver and were making false hearsay and anonymous allegations against Father to DCF including to DCF response worker Shannon McAnulty. Siobhan Cullinan O'Malley concealed during the first deposition that she is relative of ADA Cullinan. Siobhan Cullinan O'Malley called ADA Cullinan before deposition to consult what to say. Siobhan Cullinan O'Malley attempted to conceal during the second deposition that she is friendly with another ADA Farah Hill who is no longer with Norfolk County DA Office.

14. Mother in collaboration with Norfolk County DA Office and Rachael Anne Sullivan engaged in tempering with witnesses (Katherine and Alex) by sexualizing, traumatizng, establishing false diagnosis, priming my children to elicit false sexual abuse allegations against Father. Despite two outisde consultants hired by DCF Waltham - Norah Hass PsyD and Paula Stahl, LMHC - recommending to stop traumatization of children through engagement with Rachael Anne Sullivan, both DCF and DA allowed this to proceed.

On April 19, 2023, Mother together with Norfolk County DA determined that children have "trauma" despite having dispositive evidence that none of Mother's allegations are true. Katherine was not even implicated in allegations. Initially, Bay State Community Services (affiliate of Norfolk County DA) resisted to providing "trauma" therapy to Katherine as no allegation came from her but from Mother. But Norfolk County DA pressured Bay State Community Services and the "trauma" therapy service was offered.

Trauma specialist Rachael Downey Sullivan was assigned to provide "trauma" therapy to children from May 4 till August 17, 2023. Rachael Downey Sullivan was not licensed and had no prior professional experience in trauma therapy. She had only few days of training in commercial sexual exploitation. Rachael Downey Sullivan admitted at trial she did not even make determination if her services were appropriate for children. Children did not exhibit any signs of trauma at that time – no behavioral or educational regression, no problematic sexualized behavior, and were functioning well in school and daycare. During the first meeting, Rachael Downey Sullivan already established that both children had trauma. She admitted at trial that she did not even do any assessment on Katherine. She was also aware that all allegations originated from Mother who was main source of Rachael Downey Sullivan's information during her engagement with children. During trial, Rachael Downey Sullivan admitted she does not even know if what was reported by children is true or not, had zero corroborating evidence whether Father sexually abused children. Nor she even tried to obtain any independent information. She also admitted she did not assess response validity and could not even provide definition of response validity. Rachael Downey Sullivan was aware that children made allegation of sexual abuse against Mother and her partner Brian Divasta.

Two outside consultants Norah Hass PsyD and Paula Stahl, LMHC hired by DCF recommended DCF to stop Rachael Downey Sullivan's engagement with children as it was sexualizing and traumatizing them and raised concerns over positive reinforcement of children's disclosures is being made. Neither DCF nor Norfolk County DA stopped Rachael Downey Sullivan's involvement with children despite this recommendation. Dr. Ted Cunliffe, forensic psychologist, testified at trial that Rachael Downey Sullivan engaged in inappropriate behavior of priming children with the goal of eliciting specific response from them.

Rachael Downey Sullivan filed four 51A reports against Father where all allegations originated from Mother. The first report was filed after the first session on 5/4/2023. In one of her reports, Rachael Downey Sullivan explicitly stated that she wanted to make sure that her report gets to the Norfolk County DA, i.e. it's being referred to the DA so that they can arrange SAIN interview for Katherine. Norfolk County DA arranged SAIN interview of Katherine on August 2, 2023, even though no allegations were supported by DCF itself. The SAIN interview showed that Katherine was coached and Norfolk County DA decided to drop the case.

Mother developed inappropriate relationship with Rachael Downey Sullivan similar to the one she had with Sandra Fontecchio.

15. GAL Meghan Honigman concealed in her report dated 10/5/2023 that Mother has serious mental illnesses despite being aware of psychotropic prescriptions and speaking to nurse prescriber Matthew Peculis who had thos diagnosis.

16. GAL Meghan Hongiman falsified statement of Dr. Shapse as well as the fact that she had follow-up meeitng with him in order to conceal Mother's serious mental health issues established by Dr. Shapse such as mild neutocognitive impairment, high probability of susbtance abuse.

17. GAL Meghan Honigman concealed Mother's substance abuse findings by Dr. Shapse (SASSI-4) in order to prevent Mother from being evalauted for susbance use disorder.

On May 4, 2023, Dr. Shapse released his report with results of Mother's psychological evalaution. The report showed that Mother has "high probability of susbtance abuse" on screening test SASSI-4. Mother lied to Dr. Shapse that she was not presently on dextroamphetamine. She was. GAL Meghan Honigman knew that Mother lied to Dr. Shaspe about dextroamphetamine use. The purpose of SASSI-4 is to determine if in-depth substance use disorder evaluation is necessary. Mother's result requires in-depth evalaution which was not done by GAL Meghan Honigman.

18. Concealment of Alex' physical abuse by Mother in collaboration with Brian Divasta by DCF worker Sandra Fontecchio, GAL Meghan Honigman, PCP Kristen Perras, Judge Lee Mumford Peterson, Ryan Faenza Carey PC, Department of Children and Families, Norfolk County DA Office. Concurrent concealment that children are healthy with respect to sexual and physical abuse allegations against Father.

On May 10, 2023, Mother took Alex and Katherine to UMass Chan Medical School department of pediatrics child protection program run by Dr. Sasha Svendsen to evaluate them for sexual and physical abuse based on Mother's allegations.

On May 10, 2023, Dr. Sasha Svensen established that children are healthy with respect to allegations against Father of sexually and physically abusing children. Dr. Svendsen discovered bruises on Alex's shins and groin area which were about 4-week-old. Mother intentionally lied to Dr. Svendsen that children were separated from Father 4 weeks ago to match age of bruises and Father's involvement with children. Mother knew that children were separated from Father 9 weeks ago. Mother lied to Dr. Svendsen that Alex' bruises on shins are result of everyday activity. See Exhibit 96

On or about April 4, 2023, Mother had beaten Alex with boxing gloves with suggestion from Brian Divasta to beat in such a way that it looks like bruises as result of everyday activities. See exhibits 100, 119.

18.1.    DCF worker Sandra Fontecchio was aware of the evaluation, seen reports, knew when Father was separated from children and understood that all these injuries were solely in Mother's custody and that Mother lied to Dr. Svendsen. DCF worker Sandra Fontecchio had Alex' evaluation report from Newton-Wellesley Hospital available to her in DCF system that showed that Alex did not have bruises or skin marks on 3/11/2023. DCF worker Sandra Fontecchio had information available to her from Medfield PD that also showed that Alex did not have bruises or marks and specifically excluded Father as source of harm. She was also informed by Memorial school that Alex did not have bruises or marks. DCF worker Sandra Fontecchio has not done anything to raise concern or to investigate this situation. DCF worker Sandra Fontecchio concealed this information during her testimony in the court.

18.2.    DCF worker Sandra Fontecchio concealed that children were found to be healthy by Dr. Svendsen with respect to allegations against Father of sexually and physically abusing children.

18.3.    GAL Meghan Honigman was aware of the evaluation, seen reports, knew when Father was separated from children and understood that all these injuries were solely in Mother's custody and that Mother lied to Dr. Svendsen. GAL Meghan Honigman has not done anything to raise concern or to investigate this situation. GAL Meghan Honigman concealed this information in her report.

18.4. GAL Meghan Honigman concealed in her report dated 10/5/2023 that upon sexual and physical abuse evaluation by Dr. Sasha Svendsen children were founf to be helathy with respect to allegations against Father.

GAL Meghan Honigman had Dr. Svendsen report that showed that both children are healthy and had Dr. Svendsen contacts but chose not to speak to her.

18.5.    PCP Kristen Perras was aware of the evaluation, seen reports, knew when Father was separated from children and understood that all these injuries were solely in Mother's custody and that Mother lied to Dr. Svendsen. PCP Kristen Perras has not done anything to raise concern or report this. PCP Kristen Perras concealed this information in Alex' medical notes.

18.6.    PCP Kristen Perras concealed in medical notes that children were found to be healthy by Dr. Svendsen with respect to allegations against Father of sexually and physically abusing children.

18.7.    Judge Lee Mumford Peterson was aware of the evaluation, seen reports, knew when Father was separated from children and understood that all these injuries were solely in Mother's custody and that Mother lied to Dr. Svendsen. Judge Lee Mumford Peterson concealed these injuries in her Findings of Fact.

18.8.    Ryan Faenza Carey PC was aware of the evaluation, seen reports, knew when Father was separated from children and understood that all these injuries were solely in Mother's custody and that Mother lied to Dr. Svendsen. Ryan Faenza Carey PC has not done anything to raise concern or to investigate this situation. DCF worker Sandra Fontecchio concealed this information in their filings to the court.

18.9.    Ryan Faenza Carey PC concealed in their filings with the court that children were found to be healthy by Dr. Svendsen with respect to allegations against Father of sexually and physically abusing children.

18.10.   Department of Children and Families bears full responsibility for Sandra Fontecchio's misconduct as she was performing her duties while working for DCF.

18.11.   Norfolk County DA Office was aware of the evaluation, seen reports, knew when Father was separated from children and understood that all these injuries were solely in Mother's custody and that Mother lied to Dr. Svendsen. Norfolk County DA Office had Medfield PD report and Newton-Wellesley Hospital evaluation available to them as well. Both documents showed no marks or bruises on Alex right after separation from Father. Norfolk County DA Office has not done anything to raise concern or to investigate this situation.

Please see aatched Timeline and supporting Exhibits.

---

**IV.    Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1. Vacate all DCF 51B reports, DCF decisions, testimony of DCF workers, Family Assessment Plan and their findings since 1/1/2023 forward as falsified
2. Vacate all orders passed in Norfolk County Probate and Family Court since 4/24/2022 forward
3. Restore Plaintiff's parental rights in full
4. Correct children's medical records by removing falsified sexual abuse allegations and statements
5. Allow change of venue and presiding Judge in family matters
6. Require DCF workers to use body cameras when interacting with childrens and parents
7. Require DCF to provide recordings of those interactions to parents at their request
8. Require DCF workers to review and acknowledge MA state reunification policy annually
9. Require DCF workers to inform parents about their rights and MA state reunification policy in writing
10. Prohibit DCF to use any extrajudicial process such as Fair Hearing
11. Require in-person family court testimony of DCF representative at the level of area program manager or above, prohibit testimony of DCF workers over the phone
12. Require DCF to provide formal letter in support of testimony signed by area director
13. Require all KOR duties and distribution of records to parents to be performed in DCF central office as opposed to area offices
14. Require all 51B reports with supported allegations to be discussed with area director with minutes of such discussion available to parents
15. Require Norfolk County DA Office and DCF to use only psychologists (PsyD and PhD) to provide trauma therapy with documenting causes of trauma and video recording trauma therapy sessions
16. Require Norfolk County DA Office ADAs to formally disclose in writing any potential conflict of interest prior to joining the investigation
17. Require Norfolk County DA Office to use forensic psychologist (PsyD or PhD) for purposes of SAIN interviews
18. Require such forensic psychologist to evaluate child for malingering and parental coaching during SAIN interview
18. Require Norfolk County DA Office to do physical and sexual abuse evaluation through qualified clinical child protection program upon child's dislcosure of any abuse during SAIN interview
19. Require DCF workers and Norfolk County DA Office to obtain psychotropic drug use of parents and therapy notes and mental illnesses diagnosis if available
20. Vacate GAL report as incomplete, one-sided, and partially falsified
20. Require Defendants to compensate all expenses including litigaton expesnes in the family court and damages sustained by Plaintiff as a result of Defendants' actions
21. Require Defendants to compensate for pain, suffering and emotional distress of children and Father
22. Any attorney and expert fees incurred in litigation
23. Any other relief the court deems necessary

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.       Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.       For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            08/14/2025

Signature of Plaintiff
Printed Name of Plaintiff        Yaroslav Kyrpych

### B.       For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

# Attachment

## Defendants:

Kristen Denise Kelly, Individually and in her Official Capacity as ADA Norfolk County District Attorney Office

Katelyn Marie Jay, in her Official Capacity as ADA Norfolk County District Attorney Office

Norfolk County District Attorney Office

Elise Marian Barry, Individually and in her Official Capacity as employee of Department of Children and Families, Waltham area

Shannon McAnulty, Individually and in her Official Capacity as employee of Department of Children and Families, Waltham area

Sandra E. Fontecchio, Individually and in her Official Capacity as former employee of Department of Children and Families, Waltham area

Cheryl Banks, Individually and in her Official Capacity as employee of Department of Children and Families, Waltham area

Steven F. Ruscio, Individually and in his Official Capacity as employee of Department of Children and Families, Waltham area

Laura A Rafael, in her Official Capacity as employee of Department of Children and Families, Waltham area

Michelle F Frazer, in her Official Capacity as employee of Department of Children and Families, Waltham area

Philip J. Clossey, in his Official Capacity as employee of Department of Children and Families, Waltham area

Katheryn L Butterfield, Individually and in her Official Capacity as Area Program Manager of Department of Children and Families, Waltham area

Alison C Coleman-Hardy, in her Official Capacity as Area Program Manager of Department of Children and Families, Waltham area

Azelene D. Edouarzin, in her Official Capacity as Area Program Manager of Department of Children and Families, Waltham area

Department of Children and Families

Rachael Anne Sullivan, Individually and in her Official Capacity as employee of Bay State Community Services

Page 1 of 2

Lee Mumford Peterson, Individually and in her Official Capacity as Judge Norfolk County Probate and Family Court

Meghan Honigman, Individually and in her Official Capacity as Guardian ad Litem at Norfolk County Probate and Family Court

Ryan Faenza Carey PC

Carolyn P. Gannon

Brian P. Divasta

**B.**          **The Defendants (Continued)**

Defendant No 5

|  |  |
|---|---|
| Name | Shannon McAnulty |
| Job or Title | Response Worker |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | shannon.mcanulty@mass.gov |

Defendant No 6

|  |  |
|---|---|
| Name | Sandra E. Fontecchio |
| Job or Title | former Ongoing Worker |
| Street Address | 87 Russett Rd #1 |
| City and County | West Roxbury Suffolk County |
| State and Zip Code | MA 02132 |
| Telephone Number | (978) 289-2175 |
| E-mail Address | sandyfontecchio@yahoo.com |

Defendant No 7

|  |  |
|---|---|
| Name | Cheryl Banks |
| Job or Title | Supervisor |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | |

Defendant No 8

| | |
|---|---|
| Name | Steven F. Ruscio |
| Job or Title | Supervisor |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | |

Defendant No 9

| | |
|---|---|
| Name | Laura A Rafael |
| Job or Title | Supervisor |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | |

Defendant No 10

| | |
|---|---|
| Name | Michelle F Frazer |
| Job or Title | Supervisor |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | |

Defendant No 11

| | |
|---|---|
| Name | Philip J. Clossey |
| Job or Title | Supervisor |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | |

Defendant No 12

| | |
|---|---|
| Name | Katheryn L Butterfield |
| Job or Title | Area Program Manager |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | |

Defendant No 13

| | |
|---|---|
| Name | Alison C Coleman-Hardy |
| Job or Title | Area Program Manager |
| Street Address | 157 Overland Road |
| City and County | Waltham, Middlesex County |
| State and Zip Code | MA 02451 |
| Telephone Number | (781) 641-8500 |
| E-mail Address | |

Defendant No 14

      Name                 Azelene D. Edouarzin

      Job or Title         Area Program Manager

      Street Address     157 Overland Road

      City and County    Waltham, Middlesex County

      State and Zip Code  MA 02451

      Telephone Number  (781) 641-8500

      E-mail Address

Defendant No 15

      Name                 Department of Children and Families

      Job or Title

      Street Address     1 Ashburton Place

      City and County    Boston Suffolk County

      State and Zip Code  MA 02108

      Telephone Number  (617) 748-2000

      E-mail Address

Defendant No 16

      Name                 Norfolk County District Attorney Office

      Job or Title

      Street Address     45 Shawmut Road

      City and County    Canton Norfolk County

      State and Zip Code  MA 02021

      Telephone Number  (781) 830-4800

      E-mail Address

Defendant No 17

    Name                   Rachael Anne Sullivan

    Job or Title           Trauma specialist

    Street Address       1120 Hancock St

    City and County      Quincy Norfolk County

    State and Zip Code   MA 02169

    Telephone Number   (857) 939-3897

    E-mail Address       rasullivan@baystatecs.org

Defendant No 18

    Name                   Lee Mumford Peterson

    Job or Title           Judge Norfolk County Probate and Family Court

    Street Address       35 Shawmut Rd

    City and County      Canton Norfolk County

    State and Zip Code   MA 02021

    Telephone Number   (781) 830-1200

    E-mail Address

Defendant No 19

    Name                   Meghan Honigman

    Job or Title           Guardian ad Litem

    Street Address       742 Washington St

    City and County      Canton Norfolk County

    State and Zip Code   MA 02021

    Telephone Number   (781) 789-0676

E-mail Address        meghan@sdfsmass.com

Defendant No 20

    Name                Ryan Faenza Carey PC

    Job or Title

    Street Address        825 Main St

    City and County        Walpole Norfolk County

    State and Zip Code    MA 02081

    Telephone Number    (508) 668-9112

    E-mail Address        info@rfclegal.com

Defendant No 21

    Name                Carolyn P. Gannon

    Job or Title

    Street Address        89 Pleasant St Apt D11

    City and County        Medfield Norfolk County

    State and Zip Code    MA 02052

    Telephone Number    (617) 894-3205

    E-mail Address        carolyn.patricia0108@gmail.com

Defendant No 22

    Name                Brian P. Divasta

    Job or Title

    Street Address        181 Captain Eames Cir

    City and County        Ashland

    State and Zip Code    MA 01721

    Telephone Number    (508) 216-3284

E-mail Address          brian.divasta@gmail.com